**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| HEATHER WEINER, | : | |
| | : | |
| *Plaintiff*, | : | Civil Action No.: 2:26-cv-00296 |
| | : | |
| v. | : | |
| | : | |
| AMERICAN EAGLE OUTFITTERS, INC., | : | |
| AND SUBSIDIARIES, | : | |
| | : | |
| *Defendants*. | : | |

## **COMPLAINT**

AND NOW, comes the Plaintiff, Heather Weiner, by and through her undersigned counsel,

Sean A. Casey, Esquire, and files the following Complaint:

## **Nature of the Action**

This is an action brought for sex discrimination under Title VII of the Civil Rights Act of

1964, 42 U.S.C. §2000e-2(a)(1), discrimination under the Americans with Disabilities Act

Amendments Act, as amended, 42 U.S.C. §12101 *et seq.* (ADAAA), and the Pennsylvania Human

Relations Act, 43 P.S. §951 *et seq.*, (PHRA), violation of the Pennsylvania Wage Payment and

Collection Law, 43 P.S. §260.1 *et seq.*, as well as for retaliation under these various statutes, and

the creation of a hostile work environment. The Plaintiff, Heather Weiner, seeks declaratory,

injunctive and compensatory relief for the discriminatory conduct, retaliation and hostile work

environment she endured by the Defendant.

## Parties

1.      The Plaintiff, Heather Weiner, is a female individual, approximately forty-seven (47) years of age, and currently resides at 1789 Constitution Blvd., Valencia, Pennsylvania 16059.

2.      At all times relevant hereto, the Plaintiff was a qualified individual, and otherwise possessed of all qualifications necessary to perform the essential functions of the job.

3.      The Defendant, American Eagle Outfitters, Inc., and Subsidiaries (hereinafter "AEO"), is an employer within the meaning of the Act, with a principal place of business at 77 Hot Metal Street, Pittsburgh, Pennsylvania 15203.

## Jurisdiction and Venue

4.      This Court has jurisdiction over this Complaint pursuant to 28 U.S.C. §§1331, 1343, and 1367.

> A.      Also, pursuant to 28 U.S.C. 1334 (3) and (4), which gives the district court's jurisdiction over actions to secure civil rights extended by the United States government.
>
> B.      Also, pursuant to 28 U.S.C. §1367 giving the district court jurisdiction over state law claims.

5.      This action arises in part under 42 U.S.C. §2000e *et seq.*, as amended by the Civil Rights Act of 1991.

6.      The Court may also maintain supplemental jurisdiction over state law claims set forth herein (or later added) pursuant to 28 U.S.C. §1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original jurisdiction in that they form part of the same case or controversy.

7.      Venue in this District is proper under 28 U.S.C. §1391(b)(c).

**Factual Background**

8. The allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

9. Mrs. Weiner was recruited by AEO to succeed the Vice President of Tax, Treasury & Risk Management, beginning her employment as a Senior Director, Tax, in May of 2019.

10. While working for AEO, Mrs. Weiner had a history of excellent work performance and no reprimands.

11. The breadth of her responsibilities increased throughout her employment, with responsibilities that expanded into the international businesses.

12. This was particularly the case after the retirement of the VP of Tax, Treasury & Risk Management in September 2022, when Mrs. Weiner assumed responsibility for the tax team and risk management function without the promotion for which she was hired.

13. These additional responsibilities included officer and director assignments on various legal entities within AEO's organizational structure.

14. On September 10, 2024, Mrs. Weiner was admitted to the hospital for a serious, life-threatening emergent medical condition.

15. Mrs. Weiner notified her direct supervisor, Mr. James Keefer, regarding her hospitalization and the need to be absent from work for at least a few days.

16. Mr. Keefer responded to the email and included a representative from HR, Jessie Coleman, regarding the absences.

17. Mrs. Weiner was discharged from the hospital on September 13, 2024.

18.     On or around September 16, 2024, Mrs. Weiner explained the circumstances that led to her hospitalization, including but not limited to her diagnosis, to Mr. Keefer during their touch base meeting.

19.     Less than two (2) weeks after this discussion, on September 30, 2024, Mr. Keefer, along with a representative from HR, Mary Kate Wallace, informed her of the separation from AEO.

20.     Despite Mrs. Weiner's medical crisis, AEO posits the separation was part of a Reduction in Force ("RIF").

21.     In addition to the medical issue, Mrs. Weiner's inclusion in the RIF also fits within the pattern of gender-related discrimination within the Finance department for AEO.

22.     Mrs. Weiner was hired in May 2019 for succession planning for the former VP of Tax, Treasury and Risk Management, David Ovis, with the promise of professional growth and promotion.

23.     Concurrently, these functions were transitioned to report directly to Mr. Keefer, instead of the direct reporting relationship to the CFO, Mr. Michael Mathias.

24.     Mrs. Weiner was assigned these VP-related responsibilities without the promised promotion or any additional compensation at that time.

25.     Mrs. Weiner inquired about the succession plan, but the stated rationale for not granting the promotion at the time of Mr. Ovis' departure was that the employer was not making mid-year promotions at that time in 2022.

26.     Mr. Keefer indicated that the promotion to VP would be part of the annual performance review which occurs at the beginning of the following year.

27.    After the conclusion of the annual review process, Mr. Keefer informed Mrs. Weiner that she would not be granted the promotion.

28.    However, during this promotion cycle, three male colleagues were promoted to VP in the Finance organization.

29.    Those individuals were Mark Heltzel, Josh Tofil and Jonathan Kostuch.

30.    Similarly for the 2023 annual performance review, Mrs. Weiner provided details regarding significant achievements and accomplishments similar to those promoted in the prior cycle, and yet Mr. Keefer intentionally did not present Mrs. Weiner for promotion.

31.    During both cycles, other than the promotions Mrs. Weiner made on the team she led, there were limited promotions or advancement of female leaders at the director and VP levels within the Finance organization, particularly within the teams overseen by Mr. Keefer.

32.    Mr. Keefer has a history of failure to promote otherwise qualified female leaders within his organization in favor of the oft promoted male colleagues.

33.    Mrs. Weiner's inclusion in the RIF process was pretextual and made in furtherance of AEO's Finance Department's, particularly under the control of Mr. Keefer, disparate promotion of male leaders.

34.    Moreover, upon the planned separation of Mrs. Weiner, AEO made arrangements with outside vendors to provide support for the functions Mrs. Weiner was providing to her employer.

35.    Those vendors who significantly benefited from Mrs. Weiner's departure are primarily male partners from local firms, with pre-existing relationships with Mr. Keefer.

36.    Despite the stated reasoning of reducing cost as the justification for Mrs. Weiner's inclusion in the RIF, in order to supplement Mrs. Weiner's role, the employer has incurred

significant fees to these firms with benefits attributable to a select group of male vendors and individuals.

37.    The fees incurred far exceed the salary amount payable to Mrs. Weiner for this period, obviating the stated rationale for Mrs. Weiner's inclusion in the RIF.

38.    As part of Mrs. Weiner's refusal to sign a waiver of her rights to pursue these claims, among others, against AEO, Mrs. Weiner has experienced numerous instances of retaliation.

39.    First, AEO has refused to return the personal belongings of Mrs. Weiner.

40.    Mrs. Weiner requested her items be returned, which include both the physical items located at her desk at the employer's office and her personal electronic files that were on the employer's laptop she utilized while employed.

41.    The personal physical belongings held at Mrs. Weiner's desk during her employment, included but not limited to, personal photographs, children's art, clothing, desk décor, documents, and miscellaneous personal effects that she had requested to be returned.

42.    The request for both her physical items and personal electronic files was first verbalized during the virtual meeting with Ms. Wallace and Mr. Keefer on September 30, 2024.

43.    Mrs. Weiner specifically asked Mr. Keefer for permission to obtain her personal electronic files housed on her computer with Mr. Keefer verbally agreeing to return those files to her and Ms. Wallace indicating that she would speak to the internal IT teams in order to get the files returned.

44.    On October 1, 2024, Mrs. Weiner sent an email to Ms. Wallace, referencing their prior discussion, again requesting the personal electronic files and noting that there were critical files that were contained on the computer.

45.    On October 3, 2024, Mrs. Weiner sent email correspondence to Ms. Coleman, Ms. Wallace, and Mr. Keefer, requesting a status update concerning the return of her physical items and personal electronic files.

46.    That same day, Ms. Colman responded to Mrs. Weiner, copying Ms. Wallace and Mr. Keefer, indicating that her physical items would be returned in "a week or so," and that the electronic files would be provided once the laptop was returned.

47.    Regarding the personal electronic files, Ms. Colman specially stated, *"We talked through this with Bob [Vice President of Information Security] and team and we can definitely get you those personal documents, but in order to do so, we need you to send your laptop back. Once received we will partner with the Technology team to pull the requested files and get them back to you."*

48.    On October 7, 2024, Mrs. Weiner sent an email to Ms. Coleman with proposed amended/additional terms for the proposed severance agreement, including an agreed upon timeline for the requested items to be returned to her within thirty days of the separation date of October 4, 2024.

49.    As previously noted, AEO declined Mrs. Weiner's proposed amended/additional terms, and no further correspondence was received by Mrs. Weiner concerning the agreement or the personal physical items or electronic files that she had requested to be returned to her.

50.    On October 17, 2024, Mrs. Weiner sent a preservation notice to Ms. Coleman.

51.    On October 17, 2024, Mrs. Weiner returned the work laptop via FedEx, and within the package a note was included with the laptop that listed the files that were requested to be saved and returned.

52. Shipping details from FedEx confirms proof of delivery, which notes that Ms. Wallace signed for the package on October 18, 2024. (*See* Exhibit 4, FedEx details.)

53. On November 8, 2024, a letter of representation and litigation hold letter was sent to the Human Resources Department at AEO.

54. This letter detailed the scope and responsibilities the Defendant had to preserve all evidence in its possession, including but not limited to evidence contained on Mrs. Weiner's returned laptop computer.

55. Thereafter, Undersigned counsel spoke to Mr. Terry Roberts at AEO to discuss Mrs. Weiner's separation.

56. As part of this discussion, Undersigned counsel reiterated Mrs. Weiner's request to return her physical property and electronic files, as they had not been received by Mrs. Weiner at that time.

57. On February 21, 2025, Mrs. Weiner filed a Charge with the EEOC, which included the indisputable assertion that AEO was holding her personal items.

58. Despite AEO's continuous response indicating that Mrs. Weiner's personal items would be returned in early October of 2024, it was not until March 27, 2025 that AEO returned only some of her physical items and none of the promised electronically stored items.

59. Adding to AEO's clear disdain for Mrs. Weiner's rejection of its severance offer, the initial physical items returned to her were carelessly thrown into a box, which resulted in certain items being broken and/or damaged. (See Exhibit 1, FedEx details).

60. On or about April 1, 2025, Undersigned counsel sent another correspondence requesting the remaining items that AEO continued to hold without return.

61.    On or about April 10, 2025, Mrs. Weiner received a second package via FedEx delivery from AEO that contained personal items from her desk, which was more than six (6) months from her final day with AEO. (*See* Exhibit 2, FedEx details.) Here again, AEO failed to return the electronically stored items.

62.    The Defendant claimed that they were unable to timely return Mrs. Weiner's physical items because they were "unable to locate" the items.

63.    Much like the fabricated rationale behind Mrs. Weiner's inclusion in the RIF, AEO's assertion that they were "unable to locate" these items are belied by photographic evidence that demonstrates that AEO had left these items in Mrs. Weiner's former desk area since at least December 2024. (*See* Exhibit 3.)

64.    During the EEOC mediation on June 17, 2025, the Defendant informed Mrs. Weiner that AEO had destroyed the hard drive containing Mrs. Weiner's electronic files. At no point prior to this date, did AEO advise Mrs. Weiner or her counsel of this destruction despite numerous requests over many months.

65.    Despite many months of continued requests, AEO failed to acknowledge that the files were destroyed until June 2025.

66.    It must be noted that the electronic files at issue contain more than just the personal items that AEO promised to return and subsequently destroyed.

67.    The electronic files on Mrs. Weiner's hard drive also contained documents and evidence relative to the work-related discriminatory conduct of AEO.

68.    AEO was aware of this fact based upon Mrs. Weiner's original email correspondence and the multiple preservation notices sent by or on behalf of Mrs. Weiner prior to the destruction of the hard drive.

69. AEO agreed to return Mrs. Weiner's electronic files and advised that they took steps to appropriate same.

70. After learning of Mrs. Weiner's rejection of the severance, as well as the document proofs contained within the electronic files, AEO destroyed the hard drive and thus spoliated evidence in derivation of state and federal law.

71. The fact that this destruction was not communicated to Mrs. Weiner or her counsel until an EEOC mediation, despite numerous follow-up attempts, highlights the Defendant's callous disregard and retaliatory behavior towards Mrs. Weiner.

72. In its continued efforts of retaliation, AEO has provided inaccurate information to Mrs. Weiner regarding her final payout, including her PTO balance.

73. AEO had incorrectly computed Mrs. Weiner's PTO balance and Mrs. Weiner had to reach out on multiple occasions, finally with a supporting computation to obtain the proper payment.

74. On September 30, 2024, Mrs. Weiner was provided a summary indicating a PTO balance of 30.06 hours.

75. Upon review, Mrs. Weiner reached out to Ms. Coleman on October 1, 2024 to inquire about the calculation of the PTO amount.

76. On October 2, 2024, Ms. Coleman responded via email that Mrs. Weiner had a total of 264 hours of PTO for 2024, despite previously advising of a PTO balance that was substantially less.

77. On October 11, 2024, AEO issued a paycheck reflecting a PTO payout for 31.6 hours, despite advising Mrs. Weiner that her PTO balance was more than eight (8) times the amount paid.

78. On October 15, 2024, Mrs. Weiner contacted Ms. Coleman via email with a computation showing that the expected PTO based on her understanding should be 35.9 hours.

79. Having already improperly withheld Mrs. Weiner's money, AEO agreed to adjust the payout to the 35.9 hours.

80. The Plaintiff also notes the Defendant provided an incomplete and misleading recitation to the EEOC concerning the severance offer and the Defendant's retaliatory conduct following the same.

81. Mrs. Weiner provided a counterproposal to AEO's severance offer setting forth necessary language for protection given her position as an officer and/or director for certain subsidiaries of the Defendant.

82. Upon receipt of Mrs. Weiner's counterproposal, AEO requested an extended time to review the terms beyond the response requested by Mrs. Weiner. Despite Mrs. Weiner's extension agreement, AEO failed to provide any response within the extended timeframe.

83. Instead, Mrs. Weiner was required to follow up after the lapsed deadline, only for the Defendant to blanket reject any and all changes, necessitating Mrs. Weiner's retention of counsel.

84. It was only after the undersigned counsel discussed the matter with the Defendant that a revised severance proposal was provided. Both the Defendant's timeline and terms of the amended agreement as set forth in their correspondence to the EEOC are false and misleading, as the revised agreement included a small percentage of Mrs. Weiner's requested amendments.

85. The Plaintiff maintains that all of these factors point to the fact that the expressed reasons for her termination were pretextual, and that the actual reason for her termination was her sex and medical condition.

86.   Additionally, AEO blatantly violated several policies and provisions contained in its own company handbook setting forth conduct required of AEO during separation of employment as evidenced by its abhorrent behavior towards the Plaintiff as more fully set forth herein.  AEO also violated numerous laws of the Commonwealth of Pennsylvania as are more fully set forth herein and below.

87.   On or about February 21, 2025, the Plaintiff filed a Charge with the EEOC against the Defendant in this matter (Charge No. 533-2025-01266).

88.   On November 21, 2025 the EEOC issued the Notice of Right to Sue. (Exhibit 5.)

## COUNT I: SEX DISCRIMINATION - TITLE VII AND PHRA

89.   Plaintiff incorporates all the previous paragraphs by reference as if fully set forth herein.

90.   Plaintiff is a female individual.

91.   Plaintiff was treated differently than the male employees in the workplace.

92.   As a direct and proximate result of Defendant's actions, the Plaintiff has suffered and continues to suffer, lost wages and benefits, lost employment opportunities and future income, as well as humiliation, inconvenience, mental distress, and embarrassment.

WHEREFORE, the Plaintiff respectfully requests this Court enter judgment in her favor and against the Defendant and award her damages for past lost wages and benefits, future lost wages and benefits, compensatory damages for humiliation, embarrassment and inconvenience, loss of standing and reputation in the community, punitive damages, declaratory and injunctive relief, attorneys' fees and costs, adverse tax consequences, and such other relief as the Court may deem appropriate.

12

A jury trial is demanded.

## COUNT II: DISABILITY DISCRIMINATION - ADAAA AND PHRA

93.     Plaintiff incorporates all the previous paragraphs by reference as if fully set forth herein.

94.     The Defendant employer expressed discriminatory animus and committed discriminatory acts against the Plaintiff in violation of the Americans with Disabilities Act Amendment Act, as amended 42 U.S.C. §12010 *et seq.,* and the Pennsylvania Human Relations Act (PHRA), 43 P.S. §951 *et seq.*

95.     The Plaintiff has been diagnosed with several medical conditions, making her disabled within the meaning of the ADAAA, this definition would include regarding as or having a history of disability.

96.     The Defendant was made aware of these disabilities approximately two and a half weeks prior to the Defendant terminating Plaintiff's employment.

97.     At the time the Plaintiff was hospitalized, she contacted her supervisor, Mr. Keefer and advised him of her medical emergency and he proactively included HR in email correspondence recognizing the severity of the situation.

98.     The Plaintiff returned to work the week of September 16, 2024, and provided detailed information concerning her absence and health events to her team, including Mr. Keefer, during their one-on-one touch base meeting that week.

99.     The Defendant failed to engage the Plaintiff in any reasonable discussion about her condition or need for accommodation.

100.     The Defendant's actions were done with malice or reckless disregard of Mrs. Weiner's federally protected rights.

101. As a direct and proximate result of Defendant's actions, the Plaintiff has suffered and continues to suffer, lost wages and benefits, as well as humiliation, inconvenience, mental distress and embarrassment.

WHEREFORE, the Plaintiff respectfully requests this Court enter judgment in her favor and against the Defendant and award her damages for past lost wages and benefits, future lost wages and benefits, compensatory damages for humiliation, embarrassment and inconvenience, loss of standing and reputation in the community, punitive damages, declaratory and injunctive relief, attorneys' fees and costs, adverse tax consequences, and such other relief as the Court may deem appropriate.

A jury trial is demanded.

### COUNT III: RETALIATION – TITLE VII, ADAAA & PHRA

102. Plaintiff incorporates all the previous paragraphs by reference as if fully set forth herein.

103. The Plaintiff advised and discussed her medical conditions, requested accommodations, and her need for leave, and rights to be free of discrimination on multiple occasions with the Defendant, which constituted protected activity under the ADAAA and PHRA.

104. The Plaintiff experienced a severe, life-threatening emergency, and took leave as a result of hospitalization on September 10, 2024, through and including September 13, 2024.

105. The Plaintiff was terminated about fourteen (14) days after her return from being off work due to her protected medical condition.

106. Under the ADAAA, PHRA, and Title VII, a retaliatory action by an employer toward an employee for exercising their statutory rights is a violation of that statute and against public policy.

107. The chronology of events in this matter demonstrates clear evidence that the conduct of the Defendant was done in retaliation for complaints made by the Plaintiff.

108. Not only did the Defendant not take measures to correct the discriminatory nature of their criteria, but they engaged in activities to question, discipline, and demote the Plaintiff.

109. Regarding the specific retaliatory conduct following the separation of employment, detailed information has been provided with respect to withholding and the destruction of Mrs. Weiner's belongings.

110. Despite the Defendant's knowledge and possession of Mrs. Weiner's personal items, the Defendant made no effort to return her property to her as they initially indicated in correspondence prior to Mrs. Weiner's initial request for alternative terms for the severance agreement.

111. In addition, the personal items were sent in separate packages, more than six (6) and seven (7) months, respectively, after the separation.

112. Those physical items were not of value to the Defendant, but they intentionally chose to withhold such property in an effort to retaliate against Mrs. Weiner.

113. Defendant's conduct in retaliation for Plaintiff's complaints constitutes unlawful retaliation in violation of the Americans with Disabilities Act Amendment Act, as amended 42 U.S.C. §12010 *et seq.,* and the Pennsylvania Human Relations Act (PHRA), 43 P.S. §951 *et seq.,* and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.*

114. Plaintiff was harassed, humiliated, and discriminated against by the Defendant in retaliation for asserting her rights under the ADAAA, PHRA, and Title VII of the Civil Rights Act by raising the issues regarding sex and disability discrimination she endured.

115.    As a direct and proximate result of Defendant's actions, the Plaintiff has suffered and continues to suffer, lost wages and benefits, lost employment opportunities and future income, as well as humiliation, inconvenience, mental distress, and embarrassment.

WHEREFORE, the Plaintiff respectfully requests this Court enter judgment in her favor and against the Defendant and award her damages for past lost wages and benefits, future lost wages and benefits, compensatory damages for humiliation, embarrassment and inconvenience, loss of standing and reputation in the community, punitive damages, declaratory and injunctive relief, attorney's fees and costs, adverse tax consequences, and such other relief as the Court may deem appropriate.

A jury trial is demanded.

## COUNT IV: SPOILIATION

116.    Plaintiff incorporates all the previous paragraphs by reference as if fully set forth herein.

117.    After agreeing to return various electronic files from Mrs. Weiner's laptop, Defendant AEO destroyed the hard drive.

118.    At the time of destruction, Defendant AEO knew or should have known that the hard drive contained evidence of AEO's violation of Federal and state law.

119.    Defendant AEO was in sole possession of the evidence contained on Mrs. Weiner's hard drive at the time such evidence was destroyed.

120.    Defendant AEO had a duty to preserve all evidence, including but not limited to the evidence contained on Mrs. Weiner's hard drive.

16

121.    Although independently required by law, Defendant AEO was reminded of its duty to preserve such evidence by receipt of the preservation notices of October 17, 2024 and November 8, 2024.

122.    Defendant AEO's destruction of the evidence contained on Mrs. Weiner's hard drive constitutes a breach of its duty of preservation and spoliation of evidence germane to several causes of action asserted in this Lawsuit.

WHEREFORE, the Plaintiff respectfully requests this Court enter judgment in her favor and against the Defendant and award her wages, salary, commissions, bonuses, fringe benefits, damages for past lost wages and benefits, future lost wages and benefits, compensatory damages for humiliation, embarrassment and inconvenience, loss of standing and reputation in the community, punitive damages, liquidated damages, declaratory and injunctive relief, attorney's fees and costs, adverse tax consequences, and such other relief as the Court may deem appropriate.

A jury trial is demanded.

## COUNT V: THEFT OF WAGES

123.    Plaintiff incorporates all the previous paragraphs by reference as if fully set forth herein.

124.    Mrs. Weiner served as an officer or director on a number of legal entities connected to her employment with AEO.

125.    Specifically, Mrs. Weiner served as an officer or director of more than a dozen AEO subsidiary entities, all of which were connected to her employment with AEO.

126.    Mrs. Weiner's compensation with Defendant AEO was based, in part, on her work as an officer or director for these various legal entities, all of which were subsidiaries of Defendant AEO.

127.    After Mrs. Weiner's termination, AEO did not immediately remove Mrs. Weiner from her role in these legal entities, resulting in Mrs. Weiner continuing to provide services as a named officer or director without compensation for a period of time after her termination.

128.    The Defendant is in violation of the Pennsylvania Wage Payment and Collection Law, 43 P.S. §260.1 *et seq*., that requires employers to pay all earned wages, including fringe benefits, bonuses, and commissions.

WHEREFORE, the Plaintiff respectfully requests this Court enter judgment in her favor and against the Defendant and award her wages, salary, commissions, bonuses, fringe benefits, damages for past lost wages and benefits, future lost wages and benefits, compensatory damages for humiliation, embarrassment and inconvenience, loss of standing and reputation in the community, punitive damages, liquidated damages, declaratory and injunctive relief, attorney's fees and costs, adverse tax consequences, and such other relief as the Court may deem appropriate.

A jury trial is demanded.

## **COUNT VI: FRAUD**

129.    Plaintiff incorporates all the previous paragraphs by reference as if fully set forth herein.

18

130. AEO executed Board Resolutions subsequent to Mrs. Weiner's termination to reflect her removal as an officer of multiple legal entities by indicating an effective date prior to execution.

131. AEO indicated that Mrs. Weiner resigned in documents filed with the relevant authorities in the Netherlands with respect to her position as Director of American Eagle Outfitters Dutch Op. Co. B.V.

132. In direct contradiction to Defendant AEO's assertion otherwise, Mrs. Weiner was terminated by her pretextual inclusion in the RIF and did not resign her position.

133. Upon information and belief, Defendant AEO misrepresented Mrs. Weiner's alleged termination for other entities for which she served as a director or officer similar to the knowingly inaccurate and fraudulent assertions made to the authorities in the Netherlands.

134. Defendant AEO's knowing and intentional mischaracterization of Mrs. Weiner's termination to the various authorities for which Mrs. Weiner was serving as an officer or director at AEO's request constitutes fraud.

135. Defendant AEO's fraudulent conduct, as more fully set forth above, resulted in continued personal exposure to Mrs. Weiner beyond her employment with AEO.

136. Moreover, Defendant AEO's fraudulent conduct resulted in Mrs. Weiner continuing to serve as an officer or director for these subsidiary legal entities of Defendant AEO without proper compensation.

137. Defendant AEO's failure to compensate Mrs. Weiner for the time she continued to serve as an officer or director for each and every one of the legal entities beyond the date of her termination constitutes fraud.

138.    Moreover, Defendant AEO failed to promote Mrs. Weiner as it had promised as the lynchpin of recruiting Mrs. Weiner away from her former position at another company.

139.    Defendant AEO assigned the VP level requirements of leading the tax and risk management departments to Mrs. Weiner upon the retirement of Mr. Ovis.

140.    As a result, Mrs. Weiner was required to perform the duties of the VP without the promised promotion.

141.    AEO's conduct presents a classic bait and switch fraudulent conduct.

WHEREFORE, the Plaintiff respectfully requests this Court enter judgment in her favor and against the Defendant and award her damages for past lost wages and benefits, future lost wages and benefits, compensatory damages for humiliation, embarrassment and inconvenience, loss of standing and reputation in the community, punitive damages, declaratory and injunctive relief, attorney's fees and costs, adverse tax consequences, and such other relief as the Court may deem appropriate.

A jury trial is demanded.

## COUNT VII: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

142.    Plaintiff incorporates all the previous paragraphs by reference as if fully set forth herein.

143.    Defendant AEO's refusal/delay in the return of Mrs. Weiner's physical personal items caused Plaintiff to suffer emotional distress.

144.    Defendant AEO's intentional destruction of Plaintiff's hard drive has caused the Plaintiff severe emotional distress.

145. Plaintiff's hard drive not only contained irreplaceable content such as Plaintiff's late- Father's last voicemail message to her but also evidence of Defendant AEO's violations of Federal and State law as more fully set forth herein.

146. Defendant AEO had knowledge of both the irreplaceable personal documents and the evidence of Defendant's violations of law contained within the hard drive when it deliberately, callously and intentionally destroyed same.

147. Defendant AEO's thoughtful, strategic and intentional decision to ignore Mrs. Weiner and her counsel's numerous follow-up attempts over many months to obtain the agreed-to documents contained within her hard drive has caused Plaintiff to suffer severe emotional distress, upset and anxiety.

148. Defendant AEO knew or should have known that its deliberate, strategic, retaliatory and unconscionable conduct would cause injury, pain and suffering as well as emotional distress to Mrs. Weiner.

WHEREFORE, the Plaintiff respectfully requests this Court enter judgment in her favor and against the Defendant and award her damages for past lost wages and benefits, future lost wages and benefits, compensatory damages for humiliation, embarrassment and inconvenience, loss of standing and reputation in the community, declaratory and injunctive relief, costs, adverse tax consequences, and such other relief as the Court may deem appropriate.

A jury trial is demanded.

## COUNT VIII: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

149. Plaintiff incorporates all the previous paragraphs by reference as if fully set forth herein.

150.    Defendant AEO's refusal/delay in the return of Mrs. Weiner's physical personal items caused Plaintiff to suffer emotional distress.

151.    Defendant AEO's destruction of Plaintiff's hard drive has caused the Plaintiff severe emotional distress.

152.    Plaintiff's hard drive not only contained irreplaceable content such as Plaintiff's late- Father's last voicemail message to her but also evidence of Defendant AEO's violations of Federal and State law as more fully set forth herein.

153.    Defendant AEO had knowledge of both the irreplaceable personal documents and the evidence of Defendant's violations of law contained within the hard drive when it destroyed same.

154.    Defendant AEO knew or should have known that its destruction of Mrs. Weiner's hard drive would cause injury, pain and suffering as well as emotional distress to Mrs. Weiner.

WHEREFORE, the Plaintiff respectfully requests this Court enter judgment in her favor and against the Defendant and award her damages for past lost wages and benefits, future lost wages and benefits, compensatory damages for humiliation, embarrassment and inconvenience, loss of standing and reputation in the community, declaratory and injunctive relief, costs, adverse tax consequences, and such other relief as the Court may deem appropriate.

A jury trial is demanded.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court:

A)    Grant a permanent injunction enjoining Defendant, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert and

participation with them, from engaging in, ratifying, or refusing to correct, employment practices which interfere with the exercise of rights and/or discriminate in violation of Title VII of the Civil Rights Act, ADAAA, and PHRA;

B)    Order Defendant to institute and implement training programs, policies, and practices and programs designed to ensure the Defendant provide proper leave and does not retaliate and/or interfere with those who engage in statutorily protected activity;

C)    Order Defendant to make whole Heather Weiner, by providing appropriate back pay with prejudgment interest, front pay in amounts to be determined at trial, compensate her for lost benefits, and all other affirmative legal and equitable relief necessary to eradicate the effects of its unlawful employment practice;

D)    Order Defendant to pay Plaintiff compensatory, punitive, and liquidated damages in an amount to be determined at trial;

E)    Order Defendant to pay Plaintiff the reasonable attorney's fees and costs and other legal expenses incurred by the Plaintiff in this matter;

F)    Order Defendant to remove and expunge, or to cause to be removed or expunged, all negative, discriminatory, and/or defamatory memorandum or other documentation from the Plaintiff's record of employment; and

G)    Award the Plaintiff such other legal and equitable relief as the Court deems appropriate and just.

**A JURY TRIAL IS DEMANDED AS TO ALL ISSUES TRIABLE TO A JURY.**

Respectfully submitted,

/s/ Sean A. Casey
Sean A. Casey (Pa I.D. 79806)

**SEAN A. CASEY, ATTORNEY AT LAW**
The Pickering Building
960 Penn Avenue, Suite 1001
Pittsburgh, PA 15222
T: (412) 201-9090
E: sean@caseylegal.com

Counsel for Plaintiff,
Heather Weiner

24